IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SYNDI MISKE AND DARIN MISKE, ) | CASE NO. |
| ) | |
| Plaintiffs, ) | |
| vs. ) | COMPLAINT AND |
| ) | JURY DEMAND |
| KRISTINA PAKIZ, M.D., ) | |
| KATHRYN KARGES, M.D., ) | |
| CHRISTINE L. CIMO HEMPHILL, M.D., ) | |
| POPE PAUL VI INSTITUTE PHYSICIANS, P.C., ) | |
| POPE PAUL VI INSTITUTE FOR THE STUDY ) | |
| OF HUMAN REPRODUCTION, INC., ) | |
| ALEGENT HEALTH CREIGHTON ) | |
| UNIVERSITY MEDICAL CENTER, LLC, ) | |
| ALEGENT CREIGHTON HEALTH, INC., AND ) | |
| JOHN DOES 1-9,  Real Names Unknown, ) | |
| ) | |
| Defendants. ) | |

The plaintiffs, Syndi Miske and Darin Miske, allege and state as follows:

PARTIES

1.     Plaintiffs Syndi and Darin Miske are a married couple and are citizens of Montana, residing in Wibaux, Montana.

2.     At all relevant times, Defendant Pope Paul VI Institute Physicians, P.C., was a corporation, incorporated, operating and existing under the laws of the State of Nebraska, with its principal place of business in Omaha, Douglas County, Nebraska, acting by and through its employees and agents, and holding itself out to the public as a corporation furnishing medical care and treatment to patients for a fee.  At all relevant times , Defendant Pope Paul VI Institute for the Study of Human Reproduction, Inc., was a non-profit corporation incorporated, operating and existing under the laws of the State of Nebraska, and with its principal place of business in Omaha, Douglas County, Nebraska, acting by and through its employees and agents, and in conjunction with Defendant Pope Paul VI Institute Physicians, P.C., and holding itself out to the

1

public as a corporation furnishing medical care and treatment to patients for a fee (collectively referred to hereafter, the "Institute").

At all material times the Institute employed nurses, physicians, technicians, and employee and these individuals were acting within the scope and course of their agency and employment with Defendant and any act of negligence of these individuals will be imputed to Defendant Institute under the doctrine of respondeat superior.

3.      At all relevant times, Creighton University Medical Center - St. Joseph Hospital ("Creighton") was a hospital doing business at 601 North 30th Street in Omaha, Douglas County, Nebraska, acting by and through its employees and agents, and holding itself out to the public as a hospital furnishing medical care and treatment to patients for a fee, and was owned and/or operated by Alegent Creighton Health Creighton University Medical Center, LLC, a limited liability company created, operating and existing under the laws of Nebraska, with all of its members consisting of citizens of states diverse from Montana, and by Alegent Creighton Health, Inc. a non-profit corporation also incorporated, operating and existing under the laws of the State of Nebraska with its principal place of business in Nebraska.

At all relevant times, Defendant Creighton employed nurses, physicians, technicians, and employees, and these individuals were acting within the scope and course of their agency and employment with Creighton and any act of negligence of these individuals will be imputed to Defendant Creighton under the doctrine of respondeat superior.

4.      Defendant Kristina Pakiz, M.D. is a resident of Omaha, Douglas County, Nebraska, and citizen of Nebraska, and at all material times was duly licensed and authorized to practice medicine in Nebraska, holding herself out to the public as a physician specializing in obstetrics and gynecology.  At all relevant times Dr. Pakiz provided medical services to Syndi

Miske at the Institute and at Creighton. Certain acts and omissions of Defendant Pakiz were taken in the course of the doctor's association with the Institute and on its behalf; liability for the negligent acts, omissions and negligent failures to act of Defendant Pakiz are imputed to the Institute by the doctrine of respondeat superior. Other acts and omissions of Defendant Pakiz were taken in the course of the doctor's association with Creighton; liability for the negligent acts, omissions and negligent failures to act of Defendant Pakiz are imputed to Creighton by the doctrine of respondeat superior.

    5.  At all relevant times Defendant Kathryn Karges, M.D. was a resident of Omaha, Douglas County, Nebraska, and was licensed and authorized to practice medicine in Nebraska, holding herself out to the public as a physician specializing in obstetrics and gynecology. Plaintiffs believe she is now resident and a citizen of Texas. At all relevant times Dr. Karges provided medical services to Syndi Miske at the Institute and at Creighton. Certain acts and omissions of Defendant Karges were taken in the course of the doctor's association with the Institute; liability for the negligent acts, omissions and negligent failures to act of Defendant Karges are imputed to the Institute by the doctrine of respondeat superior. Other acts and omissions of Defendant Karges were taken in the course of the doctor's association with Creighton; liability for the negligent acts, omissions and negligent failures to act of Defendant Karges are imputed to Creighton by the doctrine of respondeat superior.

    6.  At all relevant times Defendant Christine L. Cimo-Hemphill, M.D., was a resident of Omaha, Douglas County, Nebraska, and at all material times was licensed and authorized to practice medicine in Nebraska, holding herself out to the public as a physician specializing in obstetrics and gynecology. Plaintiffs believe she is now resident in and a citizen of Virginia. At all relevant times Dr. Cimo-Hemphill provided medical services to Syndi Miske at the Institute

and at Creighton. Certain acts and omissions of Defendant Cimo-Hemphill were taken in the course of the doctor's association with the Institute and on behalf of the corporation; liability for the negligent acts, omissions and negligent failures to act of Defendant Cimo-Hemphill are imputed to the Institute by the doctrine of respondeat superior. Other acts and omissions of Defendant Cimo-Hemphill were taken in the course of the doctor's association with Creighton; liability for the negligent acts, omissions and negligent failures to act of Defendant Cimo-Hemphill are imputed to Creighton by the doctrine of respondeat superior.

7. At all relevant times, Defendants John Does 1-3 (whose real names are unknown) were physicians licensed and authorized to practice medicine in Nebraska, and each was a citizen of a state other than Montana, and each furnished medical diagnoses, treatment, care, and attention to patients for a fee while assuming the duty of reasonable care towards their patients in the rendering of their medical services.

8. At all relevant times, Defendants John Does 4-6 (whose real names are unknown) were contractors, subcontractors, employees, temporary employees, managers, administrators, and other unknown persons who provided care and treatment to Syndi Miske while being diagnosed, counseled and treated by the Institute and its agents, and each was a citizen of a state other than Montana,.

9. At all relevant times, Defendants John Does 7-9 (whose real names are unknown) were contractors, subcontractors, employees, temporary employees, managers, administrators, and other unknown persons who provided care and treatment to Syndi Miske while being diagnosed, counseled and treated at Creighton and by its agents, and each was a citizen of a state other than Montana.

10. The amount in controversy is in excess of $75,000.00 and diversity of citizenship exists between the plaintiffs and the defendants supplying jurisdiction to this Court under 28 U.S.C. § 1332.

11. Each Defendant may be covered by the provisions of the Nebraska Hospital-Medical Liability Act. If the Defendants are found to be covered by the provisions of the Act, Plaintiffs have elected to waive their rights, pursuant to Neb Rev. Stat. § 44-2840(4), to peer review by a medical review panel prior to initiation of this litigation. A copy of the Plaintiffs' Complaint, or any amendments thereto, was served by certified mail to the Director of the Nebraska Department of Insurance at the time the action was filed with this Court as required by law.

## ALLEGATIONS PERTINENT TO ALL CLAIMS

12. Syndi Miske sought and received professional medical advice, treatment and care from the defendants beginning in 2011.

13. On November 30, 2011, Syndi Miske met with Dr. Pakiz at the Institute in Omaha. During her visit with Dr. Pakiz, Syndi discussed her health and surgical history, and provided Dr. Pakiz with a list of current medications and medical records. Syndi was told that it would be safe for her to pursue another pregnancy and it was recommended by Dr. Pakiz and the Institute that she undergo a diagnostic procedure the following day to determine her medical status and further recommendations.

14. On December 1, 2011, upon the advice of Dr. Pakiz, Syndi underwent a diagnostic laparoscopy, diagnostic hysteroscopy, selective hysterosalpingogram, as well as endometrial and endocervical biopsies and cultures at Creighton. Dr. Pakiz and Dr. Karges performed these.

15. As a result of Dr. Pakiz and the Institute's failure to competently diagnose, treat, evaluate, monitor and counsel Syndi Miske, said medical advice, treatment and care culminated in an additional medical procedure performed on Syndi Miske. Syndi was told that this procedure would remove endometrial inclusions and promote increased fertility.

16. Syndi and Darin returned to Omaha for the procedure recommended by Dr. Pakiz and the Institute. The procedure was a six-hour surgery performed on December 30, 2011, by Dr. Pakiz, Dr. Karges, and Dr. Cimo Hemphill, at Creighton with the assistance of Creighton nurses, technicians and staff, consisting of a laparotomy with laser surgical excision of endometriosis, laser lysis of adhesions, laser myomectomy, left ovarian cystectomy and Gore-Tex patch placement.

17. Subsequent to the surgery, Syndi remained at Creighton for three nights and immediately began suffering significant hot flashes, night sweats, and bloating, pain and discomfort in her abdomen, which did not abate. She was told by Dr. Pakiz and the Institute that these were common post-surgical issues.

18. On November 8, 2012, Dr. Pakiz ordered a pelvic ultrasound because Syndi had not become pregnant and had continued to experience pain and discomfort in her abdomen and she needed to take progesterone shots to induce menstruation. At that time, the radiologist noted the presence of what appeared to be a large cyst, and Dr. Pakiz instructed Syndi to take progesterone intra-muscularly in order to make the cyst involute. Subsequently Dr. Pakiz informed Syndi the cyst was not gynecological and instructed her to seek treatment in Montana.

19. In December of 2012, upon consultation with another physician Syndi was told the apparent cyst resembled ovarian cancer and she was referred to an oncologist. Subsequently,

6

Syndi was informed she was suffering from premature ovarian failure likely related to the cyst, and she was prescribed birth control pills to control her menopausal symptoms.

20.     After enduring continuous abdominal pain and difficulties with gynecological symptoms, and being subjected to repeated intrusive diagnostic procedures, investigations and treatments, Syndi Miske underwent a total hysterectomy on September 4, 2013, because the cyst was judged to be too large to remove laproscopically.  During the surgery, a non-latex surgical glove containing approximately 300 mL of clear fluid, tied off in a knot ("foreign object"), was discovered to have been left inside her abdominal cavity by one or more of the doctors and nurses in the operating room at Creighton on December 30, 2011.  Surrounding the knot tied in the glove was a section of focally fibrotic fibroadipose tissue that was adherent to the glove.

FIRST CAUSE OF ACTION – PROFESSIONAL NEGLIGENCE

21.     The act of leaving the foreign object in Syndi Miske's abdomen by defendants was so palpably negligent that it may be inferred as a matter of law that such errors do not occur without negligence.

22.     In relation to the medical care and professional advice which the defendants provided to Syndi Miske, the defendants failed to use ordinary and reasonable care, skill and knowledge possessed and used under like circumstances by members of the medical profession engaged in a similar practice in the same or similar localities.

23.     In relation to the medical care the physician defendants provided to Syndi Miske, each failed to provide reasonable instruction and supervision to John Does 1-9 at the time of the December 30, 2011 surgery, including instruction and supervision to ensure the removal of all foreign objects not intended to be left inside Syndi Miske after the surgery.

24. The Defendants, and each of them, breached their duty of care to Syndi Miske beginning in December of 2011 when they failed to properly treat her.

25. As a direct and proximate result of professional negligence in deviating from the standard of care by Defendants, Syndi Miske suffered unnecessary medical procedures, including invasive diagnostics, surgery and treatment, causing her additional expenses, and unnecessary pain, discomfort, fear and dread which will continue into the future.

SECOND CAUSE OF ACTION – FAILURE TO OBTAIN INFORMED CONSENT

26. Prior to the foregoing procedure, Dr. Pakiz failed to competently diagnose, treat and counsel Syndi Miske. Dr. Pakiz failed to properly inform Syndi Miske of increased risks associated with the surgery, including but not limited to risks relative to Syndi Miske's medical history and the fact that Syndi Miske would almost certainly not be able to become pregnant after undergoing the six-hour surgery.

27. Had Kristina Pakiz properly informed Syndi Miske of the procedure she would be performing, the risks associated therewith, and the lack of any realistic improvement in her fertility, Syndi Miske, or any reasonably prudent person in Syndi Miske's position, would not have undergone the procedure performed by the defendant physicians at Creighton on December 30, 2011.

28. As a result of the failure to obtain informed consent from Syndi Miske, suffered all losses and damages set forth in plaintiff's First Claim.

THIRD CAUSE OF ACTION – LOSS OF CONSOTRIUM

29. As a direct and proximate result of the professional negligence of Defendants, and each of them, Darin Miske personally suffers from injuries to his wife, Syndi Miske, in the form

of loss of consortium, namely his wife's affection, companionship, comfort, assistance, and conjugal society.

30. Defendants are capable of paying a reasonable attorney fee and costs in accordance with NEB. REV. STAT. § 44-2834 (Reissue 2004) and the same should be ordered.

WHEREFORE, plaintiff prays for judgment against the defendants, and each of them, for special and general past and future compensatory damages in an amount to be specified at a later time, together with interest, a reasonable attorney fee and costs pursuant to Neb. Rev. Stat. § 44-2834, and such other relief as this Court deems necessary and appropriate.

                Syndi Miske and Darin Miske, Plaintiffs

BY:   s/Kevin R. McManaman
        Kevin R. McManaman, #20444
        KNUDSEN, BERKHEIMER,
        RICHARDSON & ENDACOTT, LLP
        3800 VerMaas Place, STE 200
        Lincoln, NE  68502
        402/475-7011
        krm@knudsenlaw.com

### DEMAND FOR TRIAL BY JURY

Plaintiff respectfully demands trial by jury in Lincoln, Nebraska, on all issues so triable.

                s/Kevin R. McManaman
                One of Plaintiff's attorneys